## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID QUINT, on behalf himself, and a class consisting of similarly situated persons,<br><br>Plaintiff,<br><br>v.<br><br>DRW HOLDINGS, LLC and JOHN DOES,<br><br>Defendants. | Case No.<br><br><br>**CLASS ACTION COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

### NATURE OF THE ACTION

1.  Plaintiff David Quint ("Plaintiff") brings this action on behalf of himself and all others similarly situated against DRW Holdings, LLC and John Doe Defendants ("Defendants") who have conspired, in violation of antitrust laws, to manipulate markets to restrain trade and to unjustly enrich themselves at the expense of Plaintiff and the other members of the below-defined Class. Plaintiff's allegations are based upon personal knowledge as to his own acts and upon information and belief as to all other matters alleged herein, including the investigation of counsel from publicly-available sources of information.

2.  The Chicago Board Option Exchange ("CBOE") Volatility Index, known by its ticker symbol "VIX", and colloquially referred to as the fear index or the fear gauge, is a popular measure of the stock market's expectation of volatility implied by S&P 500 index options, calculated and published by the CBOE. As described by the CBOE on its website:[1]

> The Cboe Volatility Index® (VIX® Index®) is a key measure of market expectations of near-term volatility conveyed by S&P 500 stock index option prices. Since its introduction in 1993, the VIX Index has been considered by many to be the world's premier

---
[1] http://www.cboe.com/products/vix-index-volatility/vix-options-and-futures/vix-index

1

> barometer of investor sentiment and market volatility. Several investors expressed interest in trading instruments related to the market's expectation of future volatility, and so V[I]X futures were introduced in 2004, and VIX options were introduced in 2006.
>
> Options and futures on volatility indexes are available for investors who wish to explore the use of instruments that might have the potential to diversify portfolios in times of market stress.
>
> Please visit the links on this page to explore how you could use VIX-related products in the management of your investment portfolio.

3. As implied by the CBOE's description, investors cannot invest directly in the VIX Index, and so VIX Options, and VIX Futures, which have been offered on the Cboe Futures Exchange (the "CFE") since 2004,[2] were created. According to the CBOE, VIX futures "provide a pure play on implied volatility independent of the direction and level of stock prices. VIX® futures may also provide an effective way to hedge equity returns and to diversify portfolios."

4. Exchange-traded products ("ETPs") linked to VIX futures have been introduced by multiple sponsors.[3] VIX Futures, VIX Options, and VIX-Linked ETPs are collectively referred to herein as "VIX-Linked Investments."

---

[2] http://www.cboe.com/products/vix-index-volatility/vix-options-and-futures/vix-futures

[3] Examples include, *inter alia*:

| Fund Name | Ticker | CUSIP |
|---|---|---|
| iPATH S&P 500 VIX Short-Term Futures ETN | VXX | 06742E711 |
| VelocityShares Daily Inverse VIX Short Term ETN | XIV | 22542D795 |
| ProShares Trust Ultra VIX Short Term Futures ETF | UVXY | 74347W163 |
| iPATH S&P 500 VIX Mid-Term Futures ETN | VXZ | 06740C519 |
| iPath Inverse S&P 500 VIX Short-Term Futures ETN | XXV | 06740L592 |
| VelocityShares Daily 2x VIX Short Term ETN | TVIX | 22539T613 |
| VelocityShares Daily 2x VIX Medium Term ETN | TVIZ | 22539T100 |
| VelocityShares VIX Short Term ETN | VIIX | 22539T621 |
| VelocityShares VIX Medium Term ETN | VIIZ | 22542D787 |
| VelocityShares Daily Inverse VIX Medium Term ETN | ZIV | 22542D829 |

5. The VIX, and in turn VIX-Linked Investments, are subject to manipulation. A recent research paper, referred to herein as the Griffin Paper,[4] found that:

> Every month, a settlement occurs where the value of monthly VIX derivatives is set equal to the VIX value calculated from SPX options. This settlement value is calculated from a wide range of out-of-the-money (OTM) SPX put and call options with various exercise prices. A manipulator would need to move the prices of these lower-level OTM SPX options at settlement to influence the value of expiring upper-level VIX derivatives. But manipulators could leave prints in the data.
>
> Several interesting data patterns emerge. First, at the exact time of monthly VIX settlement, *highly statistically and economically significant trading volume spikes occur in the underlying SPX options*. Second, *spikes occur only in the OTM SPX options included in the VIX settlement calculation* and not in the excluded in-the-money (ITM) SPX options. Third, there is no spike in volume for the similar S&P 100 Index (OEX) or SPDR S&P 500 ETF (SPY) options unconnected to volatility index derivatives. Fourth, if traders sought to manipulate the VIX settlement, they would want to move the prices by optimally spreading their trades across the SPX strikes and increasing the

| | | |
|---|---|---|
| ETRACS Daily Long-Short VIX ETN | XVIX | 902641596 |
| iPath S&P 500 Dynamic VIX ETN | XVZ | 06741L609 |
| AccuShares Spot CBOE VIX Up Shares ETF | VXUP | 00439V102 |
| AccuShares Spot CBOE VIX Down Shares ETF | VXDN | 00439V201 |
| iPATH S&P 500 VIX Short-Term Futures ETN | VXX | 06742E711 |
| iPATH S&P 500 VIX Mid-Term Futures ETN | VXZ | 06740C519 |
| iPath Inverse S&P 500 VIX Short-Term Futures ETN | XXV | 06740L592 |
| VelocityShares Daily 2x VIX Short Term ETN | TVIX | 22539T613 |
| VelocityShares Daily 2x VIX Medium Term ETN | TVIZ | 22539T100 |
| VelocityShares VIX Short Term ETN | VIIX | 22539T621 |
| VelocityShares VIX Medium Term ETN | VIIZ | 22542D787 |
| VelocityShares Daily Inverse VIX Short Term ETN | XIV | 22542D795 |
| VelocityShares Daily Inverse VIX Medium Term ETN | ZIV | 22542D829 |
| ETRACS Daily Long-Short VIX ETN | XVIX | 902641596 |
| iPath S&P 500 Dynamic VIX ETN | XVZ | 06741L609 |
| iPath Inverse S&P 500 VIX Short-Term FuturesTM ETN II | IVOP | 06741K486 |

[4] Griffin, John M. and Shams, Amin, Manipulation in the VIX? (May 23, 2017). *Available at* SSRN: https://ssrn.com/abstract=2972979 or http://dx.doi.org/10.2139/ssrn.2972979, and http://www.jgriffin.info/wp-content/uploads/2017/12/vix_pub.pdf.

3

> number of trades in the deep OTM put options consistent with the VIX formula. *Trading volume at settlement follows this pattern, whereas normally deep OTM options are rarely traded.* Fifth, certain options have discontinuously higher weight in the VIX formula but are otherwise very similar to other options. *These options exhibit jumps in trading volume at settlement that are not present at normal times.*

Griffin Paper at 3 (emphasis added).

6. Amplifying the concerns of the Griffin Paper, a "Whistleblower Letter",[5] sent to the Securities and Exchange Commission (the "SEC") and the Commodity Futures Trading Commission (the "CFTC") alleges that a

> market manipulation scheme that takes advantage of a pervasive flaw in the Chicago Board Options Exchange (CBOE) Volatility Index (VIX). The flaw allows trading firms with sophisticated algorithms to move the VIX up or down by simply posting quotes on S&P options and without needing to physically engage in any trading or deploying any capital. This market manipulation has led to multiple billions in profits effectively taken away from institutional and retail investors and cashed in by unethical electronic option market makers.

7. *The Financial Times* has also reported that Defendants' scheme has attracted the attention of the Financial Industry Regulatory Authority ("FINRA"), which is reportedly investigating whether Defendants "influence[d] prices of derivatives based on the [VIX.]"

8. Upon information and belief, Defendants colluded to manipulate VIX-Linked Investments in a coordinated fashion so that other Defendants would not counteract their efforts and cause them harm. This manipulative conduct has, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, caused, and continues to cause, injury to Plaintiff and the other members of the Class, as r investors in VIX-Linked Investments. Plaintiff, on behalf of himself and all other members of the proposed below-defined Class, seeks damages arising from Defendants'

---

[5] *Available at* https://assets.bwbx.io/documents/users/iqjWHBFdfxIU/r8LCxXQ4CfqU/v0.

4

misconduct, including such trebled damages as provided by law, and injunctive relief enjoining the continuation of the alleged manipulation.

## THE PARTIES

**Plaintiff**

9.  Plaintiff David Quint transacted in the following VIX-Linked Investments: iPATH S&P 500 VIX Short-Term Futures ETN, VelocityShares Daily Inverse VIX Short Term ETN, and ProShares Trust Ultra VIX Short Term Futures ETF. Defendants' collusive and manipulative conduct directly and proximately caused Plaintiff losses and damages.

**Defendants**

10.  Defendant DRW Holdings, LLC's subsidiary DRW Securities LLC (together "DRW") was a CFE Trading Privilege Holder that was fined and disgorged a total of $1,5257,056 following its submission of a letter of consent indicating it submitted improper bids to volatility auctions on emerging-market stocks and oil in violation of CBOE rules.[6] DRW maintains offices in this District. https://drw.com/contact.

11.  The John Doe Defendants are unknown persons, firms, and/or corporations that are, upon information and belief, horizontal competitors in the market for VIX-Linked Investments in the United States. Defendants conspired to and manipulated the prices of VIX-Linked Investments, *inter alia*, manipulating the prices or bid/ask quotes of SPX Options traded on the CBOE and/or the CFE, and thus the prices of VIX. Plaintiff does not know Defendants' identities because trading of SPX Options on the Cboe is anonymous.[7] For that reason, Plaintiff

---

[6] cfe.cboe.com/publish/CFEDisDecision/CFE%2017-0010%20DRW%20620%20Decision1.pdf.

[7] Non-party Cboe Global Markets, Inc. ("Cboe Global Markets")—the publisher of VIX and operator of the Cboe and CFE exchanges—is in possession of information capable of specifically identifying Defendants and, thus, Plaintiff will be able to identify Defendants through discovery.

does not know the identity or number of Defendants but he believes that Defendants are likely a consortium of financial institutions and/or traders. Plaintiff will request leave to amend this complaint upon learning the identity of Defendants.

## JURISDICTION AND VENUE

12. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1337, and by § 16 of the Clayton Act, 15 U.S.C. § 26.

13. Venue is proper in this District pursuant to Sections 4(a) and 12 of the Clayton Act, 15 U.S.C. § 22, and 28 U.S.C. § 1391(b),(c), and (d) because this is a District where district wherein DRW is found and the other Defendants are believed to be found or to have transacted business.

14. This Court has personal jurisdiction over each Defendant because this is a District where district wherein Defendants are believed to be found or to have transacted business. The interstate trade and commerce described in this Complaint is believe dot have been carried out, in part, within this District, and to have had a substantial effect on interstate commerce within the United States.

## CLASS ACTION ALLEGATIONS

15. Plaintiff brings this action, pursuant to Rule 23(b)(1), (b)(2), and/or (b)(3) of the Federal Rules of Civil Procedure, on their own behalf and as representatives of a Class of:

> All persons, corporations and other legal entities that transacted in VIX-Linked Investments.[8]

---

[8] Plaintiff reserves the right to revise the definition of the Class based upon subsequently discovered information and reserves the right to establish Sub-Classes where appropriate.

16.     Excluded from the Class are Defendants and their affiliates, officers, directors, employees, assigns, successors, and co-conspirators, the court, court staff, Defendants' counsel, and all respective immediate family members of the excluded entities described above.

17.     The members of the Class are so numerous and geographically dispersed that joinder of all class members in this action is impracticable.

18.     Plaintiff's claims are typical of the claims of the members of the Class, because Plaintiff and all the other Class members were damaged by the same wrongful conduct of the Defendants, and will continue to be so damaged and/or threatened with loss or damage by a violation of the antitrust laws in the absence of injunctive relief, and Defendants have acted on grounds generally applicable to the class.

19.     Plaintiff will fairly and adequately protect the interests of the Class. The interests of Plaintiff are coincident with, and not antagonistic to, those of the Class. In addition, Plaintiff is represented by counsel who are experienced and competent in the prosecution of complex class action and consumer litigation.

20.     Questions of law and fact are common to Plaintiff and the other members of the Class and the Defendants and their co-conspirators have acted on grounds generally applicable to all members of the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole. Among the questions of law and fact common to the Class are:

      a.     Whether Defendants violated § 1 of the Sherman Act;

      b.     Whether Defendants *per se* violated § 1 of the Sherman Act;

      a.     Whether Defendants engaged in a combination, conspiracy, and/or agreement to manipulate the prices of VIX-Linked Investments;

   b. The duration and extent of the contract, combination or conspiracy;

   c. The mechanisms used to accomplish the contract, combination or conspiracy;

   d. The identity of the participants in the conspiracy;

   e. Whether the conduct of Defendants, as alleged herein, caused injury to the business

   f. or property of Plaintiff and Class members;

   g. Whether injunctive and/or equitable relief should be awarded; and

   h. Whether actual damages, costs, restitution, disgorgement, statutory, and/or treble

   i. damages should be awarded.

  21. Defendants have acted and continue to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole. Class action treatment is superior to the alternatives, if any, for the fair and efficient adjudication of the controversy.

  22. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Plaintiffs know of no unusual difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action. Plaintiff is willing and prepared to serve the Class in a representative capacity with all of the obligations and duties material thereto. Plaintiff will fairly and adequately protect the interests of the Class and has no interests adverse to or in conflict with the interests of the other members of the Class.

23. The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members, which would establish incompatible standards of conduct for Defendants, would be dispositive of the interests of nonparties to the individual adjudications, and would substantially impair the ability of such nonparties to protect their interests.

24. The interest of Class members in individually controlling the prosecution of separate actions is theoretical and not practical. The Class has a high degree of similarity and is cohesive, and Plaintiff anticipates no difficulty in the management of this matter as a class action.

## FACTUAL ALLEGATIONS

25. The VIX "is an up-to-the-minute market estimate of expected volatility that is calculated by using real-time S&P 500®Index (SPX) option bid/ask quotes. The VIX Index is calculated using SPX quotes generated during regular trading hours for SPX options. The VIX Index uses SPX options with more than 23 days and less than 37 days to expiration and then weights them to yield a constant, 30-day measure of the expected volatility of the S&P 500 Index."[9]

26. Investors cannot invest in the VIX, but, as noted above, the CBOE has created derivative instruments that are linked to the VIX as the result of investor interest. *See supra* ¶ 2.

27. As noted by the CBOE:[10]

> The final settlement value is calculated from actual opening prices of S&P 500 Index (SPX or SPX Weekly) options. In contrast, the

---

[9] http://www.cboe.com/products/vix-index-volatility/vix-options-and-futures/vix-options/vix-options-specs

[10] http://cfe.cboe.com/cfe-products/vx-cboe-volatility-index-vix-futures/settlement-information-for-vix-derivatives

spot (cash) value of the VIX Index is calculated using the mid-point of disseminated bid and offer quotations in SPX and SPX Weeklys option series. Also, the daily settlement prices for VIX derivatives are calculated based on values for those derivative contracts (as opposed to SPX/SPXW values).

\* \* \*

VIX options and futures are based on the Cboe Volatility Index, a measure of 30-day expected volatility of the S&P 500 Index. The final settlement value for VIX futures and options is a Special Opening Quotation ("SOQ") of the VIX Index calculated using opening prices of constituent SPX or SPX Weekly options that expire 30 days after the relevant VIX expiration date. For example, the final settlement value for VIX derivatives expiring on January 21, 2016 will be calculated using SPX options that expire 30 days later on February 20, 2016. If there is no opening trade, the opening price is the average of an option's bid and ask price determined at the open.

\* \* \*

On expiration days for VIX derivatives, Cboe utilizes a modified Hybrid Opening System (HOSS) that facilitates a single-price open for SPX and SPX Weekly option series.

- A main feature of the modified HOSS opening procedures is the strategy order cut-off time for the constituent option series that will be used to calculate the final settlement value for VIX derivatives.

    - Currently, the strategy order cut-off time is 8:20 a.m. Chicago time. For more information about the strategy order cut-off time, click here.

    - Click here for a copy of Cboe Regulatory Circular RG17-019 (Modified HOSS Opening Procedures and Special Opening Quotation; Settlement Methodology for All Volatility Index Contracts).

    - Click here for a copy of CFE Regulatory Circular RG17-002 Modified HOSS Opening Procedures and Special Opening Quotation; Settlement Methodology for All Volatility Index Contracts and Risk Inherent in Settlement Procedure).

- All orders (including customer and professional) are eligible to rest in the book in order to participate in the

modified HOSS opening auction. Non-customer orders in symbol SPX that rest in the book during that auction must be marked "OPG" (opening rotation order). All un-executed OPG orders will be (1) considered for purposes of determining series eligible for inclusion in the SOQ; and (2) automatically cancelled prior to dissemination of the first market by Cboe.

28. As the Griffin Paper details, OTM[11] SPX put and call options connected to the VIX demonstrate a jump trading volume at settlement that are not otherwise present.

29. As noted above, VIX-Linked Investments allow financial institutions to offer clients exposure to the VIX. At least billions of dollars are invested in VIX-Linked Investments.

30. The Griffin Paper includes detailed statistical evidence that "aligns itself with what one would expect to see in the case of market manipulation of certain settlements." The data from the Griffin Paper is incorporated herein by reference, shows "considerable interesting activity in index options around VIX settlement" and concludes that "[t]he most natural explanation for these patterns appears to be attempted manipulation."

31. The Griffin Paper found that: "a manipulator can push the prices of illiquid SPX options, but reap the payoffs in the liquid VIX derivatives market" and that "the evidence is consistent with attempted manipulative activity." The Griffin Paper further concluded that "We thoroughly investigated alternative explanations of coordinated liquidity and two forms of hedging but find *that these* [alternative] *explanations do not fit the data as well as the manipulation hypothesis*" in part, because VIX manipulation is "cost-effective for a large trader." (emphasis added).

---

[11] Out of the money (OTM) is term used to describe a call option with a strike price that is higher than the market price of the underlying asset, or a put option with a strike price that is lower than the market price of the underlying asset. The value of an out of the money option erodes quickly with time as it gets closer to expiry. If it still out of the money at expiry, an option will expire worthless because it would be unprofitable to exercise that option.

32. Further bolstering the Griffin Paper, the Whistleblower Letter, sent on behalf of "an anonymous whistleblower who has held senior positions at some of the largest investment firms in the world" notes that a "pervasive flaw" in the VIX "allows trading firms with sophisticated algorithms to move the VIX up or down by simply posting quotes on S&P options and without needing to physically engage in any trading or deploying any capital. This market manipulation has led to multiple billions in profits effectively taken away from institutional and retail investors and cashed in by unethical electronic option market makers."

33. The Whistleblower Letter further states that

> As described in detail in our TCR filing, the VIX is highly subject to manipulation by market participants with the ability to rapidly post quotes in the market for S&P option. That is because the VIX is a theoretical index, which does not rely on trading activity but mid-prices, that can be moved up or down by posting quotes without any physical trading taking place.

34. The Whistleblower Letter further provides data suggesting that "the collapse of inverse VIX ETPs" on February 5, 2018, was the result of such market manipulation.

35. On February 14, 2018, CNBC quoted Bart Chilton, former commissioner of the Commodity Futures Trading Commission, as stating that the Whistleblower Letter's allegiants of VIX manipulation "'rings true to me,' adding that 'there's certainly enough smoke.'"[12] Mr. Chilton is further quoted as having stated: "The VIX has been suspect for at least seven years[.]"

36. MarketWatch[13] also quoted Ex-SEC Chairman Harvey Pitt as having stated:

> The volatility we have is troubling. And a product like VIX could be valuable to institutional investors who want to hedge against a precipitous drop in the market. But it's quite clear that these indexes' options can be manipulated. And when there were complaints about possible manipulation, the Cboe, as the marketplace, should have sprung in to action.

---

[12] http://cnb.cx/2Hejqw0
[13] http://on.mktw.net/2Cos4o1

**Defendants' Conspiracy and Manipulation of VIX-Linked Investments**

37. Defendants have participated as co-conspirators and have performed acts in furtherance of the conspiracy alleged herein, as demonstrated by the data collected by the Griffin Paper.

38. Upon information and belief, Defendants combined, conspired, and/or colluded to manipulate the prices of VIX-Linked Investments, which was anticompetitive and was and continues to be a *per se* violation of Section 1 of the Sherman Act, and/or a scheme with substantial anticompetitive effects in the domestic market for VIX-Linked Investments.

39. No Defendant could unilaterally manipulate VIX-Linked Investments without fear that other Defendants could undercut their positions and harm their investment positions.

40. The activities of the Defendants, as described in this Complaint, took place within interstate commerce; had and continue to have a substantial effect on interstate trade and commerce; and have unreasonably restrained, and continue to restrain, interstate trade and commerce. The acts complained of in this Complaint have harmed the business and property of Plaintiff and the Class and present a continued threat of loss and damage to Plaintiff and the Class. Billions of dollars of VIX-Linked Investments exist, and Defendants profited by manipulating the prices thereof.

**Damages to Plaintiff and the Other Members of the Class**

41. Defendants' scheme injured Plaintiff and all other members of the Class.

42. Defendants' combination, conspiracy, and/or agreement to manipulate the prices of VIX-Linked Investments injures competition in the market for VIX-Linked Investments in the United States.

43. Defendants' collusion deprived Plaintiff and the other members of the Class of transacting at competitive prices and reaping the benefits of competition. Instead, Defendants siphoned billions of dollars in profit by rigging the VIX.

44. As a direct, intended, foreseeable, and proximate result of Defendants' unlawful conspiracy and acts in furtherance of their conspiracy, Plaintiff and the other Class members have been injured in their business and property, in violation of the federal antitrust laws.

45. The injury to Plaintiff and the other Class members is the type the antitrust laws were designed to prevent and directly flows from Defendants' unlawful anticompetitive conduct.

## **FRAUDULENT CONCEALMENT**

46. Any applicable statute of limitations has been tolled by Defendants' knowing and active concealment of their manipulation of the prices of VIX-Linked Investments. Through no fault or lack of diligence, Plaintiff and the other Class members were deceived regarding Defendants' manipulation of the prices of VIX-Linked Investments and could not reasonably discover the manipulation.

47. Defendants' manipulation of the prices of VIX-Linked Investments was material to Plaintiff and the other Class members at all relevant times. Significantly before the filing of the instant Complaint, Plaintiff and the other Class members could not have discovered through the exercise of reasonable diligence that Defendants were manipulating the prices of VIX-Linked Investments because Defendants fraudulently concealed the same.

48. Plaintiff and the other Class members did not discover and did not know of any facts that would have caused a reasonable person to suspect that Defendants were manipulating the prices of VIX-Linked Investments because Defendants knowingly, actively, and

affirmatively concealed the facts alleged herein, including their manipulation of the prices of VIX-Linked Investments.

49. All applicable statutes of limitation have been tolled based on the discovery rule and Defendants' fraudulent concealment and Defendants are estopped from relying on any statutes of limitations in defense of this action.

## VIOLATIONS ALLEGED

## COUNT I

## VIOLATION OF 15 U.S.C. § 1

50. The facts set forth in ¶¶ 1-49 above are incorporated by reference as if fully set forth herein.

51. Beginning at a time unknown to Plaintiff and continuing to the present, Defendants participated in a contract, combination and/or conspiracy to manipulate the prices of VIX-Linked Investments and/or Defendants' anticompetitive combination, conspiracy, and/or agreement alleged herein resulted in substantial anticompetitive effects in the market for VIX-Linked Instruments in the United States in violation of Section 1.

52. By colluding with their competitors to manipulate VIX-Linked Investments, Defendants and their co-conspirators intended to and did suppress competition. Defendants had a common motive to collude in that they would benefit by profiting from VIX-Linked Investments manipulation.

53. The Defendants' conduct constitutes a *per se* violation of § 1 of the Sherman Act. Alternatively, their conduct constitutes an unreasonable restraint of trade when judged against the rule of reason.

54. As a result of Defendants' ongoing conduct, Plaintiff and the other members of the Class have suffered and will continue to suffer loss or damage, and threatened loss or damage, by a violation of the antitrust laws.

55. The anticompetitive combination, conspiracy, and/or agreement alleged herein occurred within the flow of and substantially affected interstate commerce.

56. The anticompetitive combination, conspiracy, and/or agreement alleged herein unreasonably restrained trade, and there is no legitimate business justification for, or procompetitive benefits of, Defendants' unreasonable restraint of trade. Any alleged procompetitive benefit or business justification is pretextual and/or could have been achieved through less restrictive means.

57. As a direct and proximate result of Defendants' anticompetitive scheme and concrete acts in furtherance of that scheme, Plaintiff and the other members of the Class have been injured in their business and property by reason of Defendants' violation of Section 1, within the meaning of Section 4 of the Clayton Antitrust Act, 15 U.S.C. § 15.

58. Unless enjoined, Defendants' anticompetitive combination, conspiracy, and/or agreement will continue.

59. Plaintiff's and the other Class members' injuries are of the type of injuries that antitrust laws were designed to prevent and are a direct result of Defendants' unlawful anticompetitive conduct.

60. Plaintiff and the other members of the Class are entitled to treble damages for the violations of the Sherman Act alleged herein.

61. Plaintiff and the other members of the Class are also entitled to injunctive relief, costs, attorneys' fees, and equitable relief, pursuant to 15 U.S.C. § 26.

## JURY DEMAND

Plaintiff demands a trial by jury.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests the following relief:

A. That the Court determine that this action may be maintained as a class action under the Federal Rules of Civil Procedure;

B. That Defendants' actions alleged herein be adjudged and decreed to be in violation of § 1 of the Sherman Act, 15 U.S.C. § 1;

C. That Defendants be enjoined from continuing the illegal course of conduct concerning the compulsory arbitration clauses alleged herein;

D. An order finding Defendants jointly and severally liable for the damages incurred by Plaintiff and the Class;

E. An judgment against Defendants jointly and severally awarding Plaintiff and the other members of the Class their actual damages, costs, restitution, disgorgement, statutory, and/or treble damages under applicable law;

F. A judgment against Defendants jointly and severally awarding Plaintiff and the other members of the Class monetary damages for their violation of federal antitrust laws, in amount trebled;

G. An order requiring Defendants to pay both pre- and post-judgment interest on any amounts awarded;

H. That Plaintiff and other members of the Class recover their costs of this suit, including reasonable attorney's fees, and expenses, as provided by law; and

I. That Plaintiff and the other members of the Class be granted such other, further and different relief that is appropriate, just, equitable and/or necessary to prevent a recurrence of the conspiracy.

Dated: March 5, 2018                By: /s/ Michael J. Klein
                                                              Aaron L. Brody
                                                              Michael J. Klein
                                                              **STULL, STULL & BRODY**
                                                              6 East 45th Street
                                                              New York, NY 10017
                                                              Telephone: (212) 687-7230
                                                              Facsimile: (212) 490-2022
                                                              Email:  abrody@ssbny.com
                                                                               mklein@ssbny.com

                                                              ***ATTORNEYS FOR PLAINTIFF***